UNITED STATES v. CURRIER LUMBER
CO., Inc., et al.

SAME v. CURRIER.
Criminal Nos. 17562, 17563.

District Court, D. Massachusetts.

Feb. 17, 1947.

Edmund J. Brandon, U. S. Atty., of Boston, Mass., by Joseph M. Hargedon, Asst. U. S. Atty., both of Boston, Mass., for plaintiff.

Richard C. Sheppard and William J. O'Neill, both of Boston, Mass., for defendants.

WYZANSKI, District Judge.

Harold C. Currier is the president, the treasurer, a director and owner of 75% of the only class of stock of Currier Lumber Company, a Massachusetts corporation. His wife under an "arrangement" with him received as a "gift" the other 25% of the stock, on which she has received no dividends and over which she has "exercised no dominion or power."

In 1943 and 1944 the corporation sold lumber to numerous purchasers. In each year checks representing thousands of dollars given in payment of that lumber and

made payable to the corporation were received by H. C. Currier and were endorsed by him with the legend "Currier Lumber Co. Harold C. Currier" and were deposited by him in his personal account. An account of the receipt or the use of these checks does not appear upon the books of the corporation. Neither Mrs. Currier nor officers of the corporation other than H. C. Currier knew of the receipt or the use of the checks.

H. C. Currier in making the corporate federal income tax returns and his individual income tax returns for the years 1943 and 1944 did not include in gross income or elsewhere an accounting of these checks.

In Crim. 17562 he and the corporation were indicted for violation of § 145(b) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 145(b), on the charge that in each of the years 1944 and 1945 they wilfully attempted to evade and defeat federal taxes by filing for the calendar years 1943 and 1944 respectively a false and fraudulent corporation tax return and concealing from proper officers of the United States the correct corporate gross and net incomes.

In Crim. 17563 H. C. Currier also was indicted under the same statute on the charge that in each of the years 1944 and 1945 he wilfully attempted to evade and defeat federal taxes by filing for the calendar years 1943 and 1944 respectively a false and fraudulent personal income tax return and concealing from proper officers of the United States the correct gross and net income received by him.

■ With respect to the first indictment there is no legal question worth extended discussion. The corporation's gross income was deliberately understated. There is no merit to the argument that since some checks were not received by the corporation they were not reportable as gross income. The purchasers of the lumber gave the checks to Currier as agent of the corporation and he was authorized to receive them. When Currier took that money for his personal use the corporation had less in checks but it had (and being on an accrual basis, it should have reported) an equivalent amount of receivables from Currier personally. These facts were all known to Currier in his capacity as president, treasurer and tax reporter for the corporation. His concealment of the facts was a violation of the tax laws by Currier personally and by the corporation of which he was president and treasurer and for which he was ex officio fully authorized to act in receiving checks, making payments and executing tax returns. C. I. T. Corporation v. United States, 9 Cir., 150 F.2d 85, 89, 90. Other stockholders' and officers' ignorance of H. C. Currier's malfeasance is irrelevant.

With respect to the second indictment defendant rests his case on the extraordinary rule enunciated in Commissioner v. Wilcox, 327 U.S. 404, 66 S.Ct. 546. That decision can not be extended to embrace this situation.

■ When H. C. Currier endorsed the corporate checks and deposited them in his personal account he exercised his authority as a corporate officer to transfer to himself as an individual not only possession and custody of, but legal title to the checks. There was more than "the bare receipt of property or money" (327 U.S. 408, 66 S. Ct. 549) or the misuse of money entrusted to a servant's custody.

■ Moreover, when Currier took the checks he was the legal and equitable owner of 75% of the stock and, if it be material, I find that he was also the equitable owner of the remaining 25% of the stock of which his wife had received only the bare legal title as a gift. So far as appears, the corporation was solvent in both the equity and bankruptcy sense of the term solvency. There is no reason to believe that at any time it lacked assets sufficient to pay all creditors including the claims of the United States and of local authorities for taxes. In short, except for the hindrance to and fraud upon the tax authorities, there is no basis for concluding that Currier's act was a fraud on corporate creditors. Nor was Currier's act stealing from the corporation, larceny from the corporation, embezzlement from the corporation or any like crime under Massachusetts law, since I find that at the time he took the checks he did not do so "with intent to steal or embezzle" but that he regarded them as substantially his own

property. Mass.G.L.(Ter.Ed.) c. 266, § 30; c. 277, § 39; Com. v. Bennett, 118 Mass. 443, 453. See Com. v. Novick, 248 Mass. 317, 318, 142 N.E. 771. In short, Currier took the checks under a "claim of right" (327 U.S. 408, 66 S.Ct. 549) as the only person beneficially interested in those checks.

■ Moreover, quite apart from Currier's intent, the taxing authorities had the right to treat all or at least 75% of the withdrawal as a constructive "dividend" by a corporation to its shareholder. 26 U.S. C.A.Int.Rev.Code, § 115; Hadley v. Com'r, 59 App.D.C. 139, 36 F.2d 543; Chattanooga Sav. Bk. v. Brewer, 6 Cir., 17 F.2d 79; Anketell Lumber & Coal Co. v. United States, 1 F.Supp. 724, 76 Ct.Cl. 210. Even though paid out of capital the checks were, under Massachusetts law, dividends. Spiegel v. Beacon Participations, Inc., 297 Mass. 398, 8 N.E.2d 895.

Against the reasoning set forth in the last two paragraphs Currier makes the point that he made no entry in the corporate books either of the corporate receipt of these checks or his personal use of them. Therefore he says that he did not act under a claim of right, but always acted as an embezzler.

■ One answer to that argument is that there is no evidence in the record that he intended to act as an embezzler. Where an act may have been done with either of two intents, one of which was lawful, and the other criminal, there is no presumption that the intent was criminal. Hubbard v. United States, 9 Cir., 79 F.2d 850, 853. Indeed, an innocent construction of an act of debatable motive is to be preferred under the maxim omnia presumuntur rite et solemniter esse acta, donec probetur contrarium. Cincinnati, N. O. & T. P. R. Co. v. Rankin, 241 U.S. 319, 327, 36 S.Ct. 555, 60 L.Ed. 1022, L.R.A.1917A, 265; Fidelity & Deposit Co. of Maryland v. Grand Nat. Bk., 8 Cir., 69 F.2d 177, 183. Hence, I find that so far as concerns the intent to steal from the corporation (not, observe, the intent to evade taxes) Currier acted innocently.

An even better answer, already suggested four paragraphs above, is that regardless of what Currier thought he was not an embezzler and had a right to the money, or at any rate to most of it, since he was either a 100% or a 75% owner of the equity in the business, and the corporate assets were sufficient to meet senior obligations.

Another point urged in Currier's behalf is the statement in Wilcox's case that "a taxable gain is conditioned upon [both] (1) the presence of a claim of right to the alleged gain and (2) the absence of a definite, unconditional obligation to repay or return that which would otherwise constitute a gain." 327 U.S. at page 408, 66 S.Ct. at page 549.

It would be appropriate to rule in the case at bar that because he was the sole beneficial owner (or at least a 75% beneficial owner) of the corporate equity, Currier was under no obligation to repay the checks (or 75% of their proceeds). Thus it could be said that the second as well as the first test enunciated by the Supreme Court has been met.

But, with due deference to the Supreme Court, it seems to be better to point out by the two following illustrations that the second prerequisite specified in the Wilcox case is not a universal sina qua non in determining whether an unlawful acquisition is a taxable gain.

Where A, an employee, embezzles $100 from his employer B, and uses the money to buy stock which pays A a dividend, A is under "a definite, unconditional obligation to return" the stock and the dividend to B. Yet, as Mr. Justice Murphy observes, "if the taxpayer uses the property [that is, the $100] himself so as to secure a gain or profit therefrom [that is, the dividend] he may be taxable to that extent" [that is, on the dividend].

Where A, a landlord, collects from his tenant B an amount in excess of maximum prices under regulations of the Price Administrator he is under "a definite, unconditional obligation to repay or return" the excess and more besides. Yet prior to the enforcement of that obligation by the tenant or the Administrator the landlord must count the excess as taxable income.

I am not unaware that the ratio decidendi of my decision, if applied to other cases, might serve "to give the United States an unjustified preference as to part

of the money which rightfully and completely belongs to the taxpayer's employer." 327 U.S. at page 410, 66 S.Ct. at page 550. Nor am I unaware that the ratio decidendi of the Wilcox case served completely to immunize from federal taxation the gains and profits derived from business transactions—the employee was not taxable and the employer (having sustained a loss in the form of an uncollectible obligation due from the embezzler) was likewise not taxable. If either consideration be relevant the latter is entitled in my view to greater weight.

I, therefore, find the corporate defendant guilty as charged in Crim. 17562 and the individual guilty as charged in Crim. 17562, and 17563.