216 F.2d 891
 William CALVARESI, Appellant,
v.
UNITED STATES of America, Appellee (three cases).
Jerry BENALLO, Jr., Appellant,
v.
UNITED STATES of America, Appellee (three cases).
Eugene SMALDONE, Appellant,
v.
UNITED STATES of America, Appellee (four cases).
Clyde SMALDONE, Appellant,
v.
UNITED STATES of America, Appellee (four cases).
Michael J. BENALLO, Appellant,
v.
UNITED STATES of America, Appellee (two cases).
 Nos. 4833-4848.
 United States Court of Appeals Tenth Circuit.
 Nov. 2, 1954.
Rehearing Denied Nov. 16, 1954.
 
 A. F. Zarlengo, W. H. Erickson and Francis S. Mancini, Denver, Colo. (A. X. Erickson, Albert E. Sherlock, Milton Berger, F. E. Dickerson, T. J. Morrissey, W. F. Dwyer and William L. Rice, Denver, Colo., on the brief), for appellants.
 Donald E. Kelley, U.S. Atty., and James W. Heyer, Asst. U.S. Atty., Denver, Colo. (Robert Swanson, Asst. U.S. Atty., Denver, Colo., on the brief), for appellee.
 Before HUXMAN, MURRAH and PICKETT, United States Circuit Judges.
 HUXMAN, Circuit Judge.
 
 
 1
 These appeals center around a series of indictments returned against appellants in the United States District Court for the District of Colorado. Indictments Numbers 13,800 and 13,833 were conspiracy indictments, in which all of the appellants together with others were joined. Numbers 13,777, 13,778, 13,794 and 13,795 were indictments against individual defendants, charging them with the commission of substantive offenses growing out of the conspiracy indictments. All the indictments except Number 13,833 were consolidated for trial. No trial other than as to Eugene Smaldone and Clyde George Smaldone has been had on that indictment. For the purpose of simplifying the record and saving unnecessary expense of duplicate records in each appeal, a consolidated record and brief were filed by the appellants. All appellants join in presenting the issues common to all of them and in urging additional assignments arising in each individual case under the substantive indictments. All the parties to this appeal are to be commended for this because such a procedure has not only resulted in eliminating a great deal of unnecessary court costs and printing fees but has greatly lightened our work in considering the issues presented.
 
 
 2
 On September 21, 1953, indictment Number 13,777 containing four counts was returned against William Calvaresi. Counts one and two charged him with corruptly endeavoring to influence and impede petit jurors in the United States District Court for Colorado and by such means endeavoring to impede the administration of justice in a trial set for September 21, 1953, against Eugene Smaldone, in violation of 18 U.S.C.A. § 1503. Counts three and four predicated on the same acts charged in counts one and two charged him with bribing and offering to bribe such jurors, in violation of 18 U.S.C.A. § 206.
 
 
 3
 On the same day, indictment Number 13,778 containing two counts was returned against Jerry Benallo, Jr. Count one charged him with unlawfully endeavoring to impede the administration of justice in the same trial by seeking to intimidate jurors by threats and force, in violation of 18 U.S.C.A. § 1503. Count two predicated on the same transaction set out in count one charged the offense of bribery and attempted bribery, in violation of 18 U.S.C.A. § 206.
 
 
 4
 On September 25, 1953, indictment Number 13,794 was returned against Eugene Smaldone. The first eight counts charged that on the dates specified therein the defendant by force and threats endeavored to influence petit jurors in the case pending against Eugene Smaldone and thus sought to obstruct the administration of justice, in violation of 18 U.S.C.A. § 1503. Counts nine to sixteen, inclusive, based upon the same transactions set out in the first eight counts charged bribery and attempted bribery of jurors, in violation of 18 U.S.C.A. § 206.
 
 
 5
 On September 25, 1953, indictment Number 13,795 was returned against Clyde George Smaldone. The first three counts charged that on dates specified therein the defendant by force and threats endeavored to influence petit jurors in the case against Eugene Smaldone and thus sought to obstruct the administration of justice. Counts four, five and six based upon the same transactions set out in the first three counts charged bribery and attempted bribery of jurors, in violation of 18 U.S.C.A. § 206.
 
 
 6
 On September 28, 1953, indictment Number 13,800 in two counts was returned against Eugene Smaldone, Clyde George Smaldone, William Calvaresi, Jerry Benallo, Jr., Fiore Smaldone, Louis F. Smaldone and Michael J. Benallo. Count one charged them with a conspiracy under 18 U.S.C.A. § 371 to commit an offense against the United States, in that they would corruptly and by threats and force and by threatening communications endeavor to influence jurors summoned on a panel to the United States District Court in a case pending against Eugene Smaldone. This count set out twenty overt acts. Count two charged a conspiracy under 18 U.S.C.A. § 371, to bribe and offer bribes to such jurors.
 
 
 7
 On October 16, 1953, indictment Number 13,833 in two counts was returned against the same defendants and one additional defendant, Joseph F. Cefalu. The two counts of this indictment were identical in substance with the corresponding two counts of indictment Number 13,800. The indictment set out the same twenty overt acts set out in Number 13,800, but contained two additional overt acts.
 
 
 8
 Before trial, Eugene Smaldone and Clyde George Smaldone entered pleas of guilty to counts one and two of indictment Number 13,833. The remaining defendants pleaded not guilty thereto and all defendants pleaded not guilty to all other indictments, including conspiracy indictment Number 13,800. Louis F. Smaldone and Fiore Smaldone were granted a severance and have not been brought to trial.
 
 
 9
 When the consolidated indictments came on for trial, Eugene Smaldone and Clyde George Smaldone filed pleas of former jeopardy in causes Numbers 13,794, 13,795 and 13,800, predicated on the ground that these indictments charged the same offense to which they had pleaded guilty under indictment Number 13,833. The trial court reserved its ruling on the motion until after the verdict by the jury and thereafter overruled the motion. The jury found all defendants guilty on all counts of all indictments on which they were tried in the consolidated case.
 
 
 10
 Sentences.
 
 
 11
 In Number 13,777 the court sentenced William Calvaresi to five years on counts one and two and to fifteen years on counts three and four. Two years of the sentence on counts one and two and ten and one-half years of the sentence on counts three and four were suspended. A fine of $5,000 was also imposed. The sentences on all four counts were made to run consecutively. In Number 13,800 Calvaresi was sentenced to a term of five years on each of counts one and two. The judgment is silent as to whether these sentences run consecutively or concurrently. Service of sentence was suspended. Calvaresi thus is required to serve a total sentence of fifteen years and pay a fine of $5,000.
 
 
 12
 In Number 13,794 Eugene Smaldone was sentenced to five years on each of the first eight counts and to fifteen years on each of counts nine to sixteen, inclusive, and to pay a fine of $24,000. Two years of the sentence on each of the first eight counts were suspended; twelve years of the sentence on counts nine to fourteen, inclusive, were suspended and eleven years of the sentence on each of counts fifteen and sixteen were suspended. In Number 13,833 he received consecutive sentences of five years each on counts one and two, these sentences to run consecutively to the sentences imposed in Number 13,794. In Number 13,800 he received consecutive sentences of five years on each of counts one and two, these sentences to run concurrently to those imposed in Numbers 13,794 and 13,833. Service of this sentence was suspended. The total sentence he was required to serve was sixty years.
 
 
 13
 In Number 13,795 Clyde Smaldone was sentenced to five years, on each of counts one, two and five and to fifteen years on each of counts three, four and six, and to pay a fine of $24,000. One year of the sentence on counts one, two and five, two years of the sentence on each of counts four and six, and three years of the sentence on count three were suspended. In Number 13,833 he received consecutive sentences of five years on each of counts one and two. These sentences were made to run consecutively to the sentences imposed in Number 13,795. In Number 13,800 he received consecutive sentences of five years on each of counts one and two. Service of Sentence was suspended. His total sentence was sixty years.
 
 
 14
 In Number 13,778 Jerry Benallo, Jr., was sentenced to five years on count one and to fifteen years on count two, and to pay a fine of $5,000. Two years of the sentence on count one and three years of the sentence on count two were suspended. In Number 13,800 he received consecutive sentences of five years on each of counts one and two. Service of these sentences was suspended. He was thus required to serve a total of fifteen years.
 
 
 15
 In Number 13,800 Michael Benallo was sentenced to consecutive sentences of five years on each of counts one and two, making a total term of ten years to be served by him, and to pay a fine of $5,000.
 
 
 16
 Twenty-one assignments of error are urged for reversal. Those that relate to all the appellants will be treated generally without referring to individual appellants. A number of assignments relate to matters that fall within the field of exercise of discretion by the trial court. In order to keep the opinion within reasonable limits, these assignments will be considered together and we will not set out in detail the evidence in the record which leads us to the conclusions with respect to the same, as hereinafter set out. We think it is sufficient to say that we have given careful and painstaking consideration to these assignments and have considered the entire record and are of the view that the record supports our conclusions.
 
 
 17
 While appellants state in general that the indictments failed to state an offense against the United States, the arguments on this assignment in the brief are limited to conspiracy indictment Number 13,800 and this assignment will therefore by treated as limited to that indictment. The argument is that the indictment fails to set out the essential elements necessary to constitute the offense of conspiracy and that its allegations are so general that a conviction thereunder would be no protection against being put in jeopardy for the same offense a second time. It is to be noted that no motion to dismiss the indictment was filed. While this does not prevent appellants from for the first time presenting this question on appeal if the indictment in fact is void upon its face, it does require that all reasonable inferences and intendments from the language used shall be drawn in favor of the validity of the indictment.[1]
 
 
 18
 The primary complaint is that the indictment refers to petit jurors only in general; that it fails to show how many petit jurors were summoned on the panels and that it left to pure guess work what petit jurors were involved, as well as what friends of said jurors had been contacted. This argument overlooks the essence of the offense of conspiracy. The gist of the offense charged is the unlawful agreement and understanding between the defendants that they would tamper with members of the panel of jurors. How many or which jurors were to be contacted was not a part of the offense of conspiracy. It was necessary for the Government to allege only that such an agreement was made and that an overt act occurred.
 
 
 19
 Count one of the indictment charged that the appellants 'conspired, combined, confederated and agreed together to commit an offense against the United States; that they agreed that they would then and there corruptly and by threats and force, and by threatening communications, endeavor to influence, intimidate and impede various petit jurors summoned on panels of the United States District Court in and for the District of Colorado, in the case of the United States versus Eugene Smaldone, also known as Checkers Smaldone, set for trial on the 2nd day of June, 1953, and for retrial on the 21st day of September; and that they would endeavor to influence, obstruct and impede the due administration of justice in violation of Title 18 U.S.C. Section 1503.' Count two charged in identical language that they conspired to bribe various jurors of the identical panel called in the identical case set for trial and retrial on the identical dates set out in count one, in violation of 18 U.S.C.A. 206. There is thus no uncertainty with what they were charged. They were charged with conspiring to tamper with a particular jury, particularly described, and to be used in a particular case, the name of which was given and the date on which the case was to be tried was set out in the indictment. As stated, how many jurors they actually contacted or how many friends of jurors they sought to influence was not an element of this charge. All the Government had to prove was the unlawful agreement to tamper with this specific jury in the manner specifically set out therein, for the purpose of violating the two criminal statutes involved. There certainly was no uncertainty as to what jury panel was involved, nor was there a failure to allege overt acts carried out in effecting the conspiracy. What individual jurors, or how many, or what friends of prospective jurors they undertook to contact would become material only when they went to trial for the substantive offenses.
 
 
 20
 The further contention is made that the indictment failed to charge an offense under 18 U.S.C.A. § 206, because the prohibition of bribes of 'juror * * * authorized by any law of the United States * * *' was not intended to include prospective jurors or jurors summoned on panels but was limited to jurors selected and sworn to try the case set out in the indictment. With this narrow construction of the term 'juror' we cannot agree. There are some state decisions that so construe the term 'juror'. See State v. Williford, 111 Mo.App. 668, 86 S.W. 570. However, even in the state courts the majority rule, and what we think is the better rule, is not so narrowly limited. In State v. McCrystol, 43 La.Ann. 907, 9 So. 922, 925, a criminal case, appellant's construction of a 'juror' was rejected. Mr. Justice Fenner in part stated, 'But all the statutes of the state and all law-writers universally apply the term 'juror' to persons selected and summoned according to law for the purpose of serving as grand or petit jurors, whether they have been actually impaneled and sworn or not.'[2] This definition was adopted by the Federal Court in United States v. Marsh, 5 Cir., 106 F. 474; and in United States v. Russell, 255 U.S. 138, 41 S.Ct. 260, 65 L.Ed. 553, the Supreme Court held that a member of a jury panel who had not yet been selected or sworn was a juror within the purview of Section 135 of the Criminal Code. It is difficult to believe that Congress in the passage of this Act intended to protect the inviolability of twelve men, after they had been selected from a jury panel and had been sworn and placed in the jury box, yet permit one with impunity to corrupt them with bribes and offers of bribes while a member of the jury panel, but before they had been selected in a particular case.
 
 
 21
 It is further contended that the indictments were insufficient in that they 'failed to allege scienter or that the defendants knew that any of the persons set forth in said indictments as jurors, or friends of jurors, were in fact jurors or friends of jurors.' Scienter or knowledge is an essential element of the conspiracy charged in Number 13,800. Where a personal knowledge is essential to the commission of an offense, it must be averred that the accused had such knowledge and failure to so allege will void the indictment, unless the statement of the act itself necessarily implies a knowledge of its unlawfulness.[3]
 
 
 22
 Indictment Number 13,800 charged appellants with conspiring to bribe and attempting to bribe various petit jurors summoned on panels of the United States District Court for the District of Colorado, in the case of the United States versus Eugene Smaldone. Thus the panel of jurors to be approached is specifically set out and identified in the indictment. The language of the indictment that they agreed that they would then and there corruptly endeavor to bribe jurors on panels called to try the Smaldone case, pinpointed the particular jury referred to and implied knowledge on appellants' part that the persons to be contacted were members of the panel. Since the gist of the offense was to corrupt members of the panel without having in mind at the time any specific juror, there was no need in the conspiracy indictment to allege knowledge that any specific individual was to be approached or was a member of the panel.
 
 
 23
 What has been said with respect to the definition of what constitutes a juror within the meaning of Title 18 U.S.C.A. §§ 206 and 1503, disposes of assignment of error number three, in which it is urged that the court erred in failing to submit appellants' instruction defining a juror as one who has been sworn to try and determine the case in issue, and assignment of error number four, in which it is urged that the court erred in refusing to direct a verdict of acquittal as to all charges relating to bribery of any of 'said so-called jurors' because of lack of proof that they had been selected to sit on the Smaldone jury.
 
 
 24
 It is further urged that the indictment in Number 13,800, while purportedly charging only one conspiracy, in fact charged two or more distinct conspiracies. It is urged that the proof showed one conspiracy to bribe jurors in the June trial of Eugene Smaldone, which ended in a mistrial, and another conspiracy to bribe and influence them in the retrial of the case set for September 21, 1953. With this construction we cannot agree. The general scheme was to procure the release of Eugene Smaldone in the criminal case which was pending against him by bribing and corrupting members of the panel from which the specific jurors selected to try the case were to be selected. The mere fact that the first trial ended in a mistrial did not bring to an end the over-all conspiracy and make necessary a second and independent meeting of the minds of the conspirators to effect the release of Eugene Smaldone. It was the intent and purpose of the original conspiracy to do what was necessary in the minds of the conspirators to effect such release in the case pending against Smaldone. When the first trial ended in a mistrial, the original unlawful agreement was continued to bring about the object of that conspiracy. We think the facts of this case bring it within the case of Blumenthal v. United States, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154, rather than the case of Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557, upon which appellants rely.
 
 
 25
 It is urged that the court abused its discretion in overruling appellants' motion for a bill of particulars, using indictment Number 13,794 as an illustration, in which appellants sought the name of the juror mentioned in each count, his residence, the manner and method alleged to have been used to influence, etc., such juror, and if a threatening communication was delivered to said juror, its contents; in refusing to grant a motion to transfer the case to another district for trial; in refusing to grant the motion of William Calvaresi, Jerry Benallo, Jr., and Michael J. Benallo for relief from prejudicial joinder for trial and in refusing to make the Government reveal the names of its witnesses.
 
 
 26
 Appellants concede that all the matters complained of in this group of assignments of error involve the exercise of discretion by the trial court and that they may be heard to complain only where there is an abuse of such discretion. Since there is no dispute as to these principles of law, no authorities need be cited in support thereof. It is also without dispute in the law that an appellate court will not reverse a trial court merely because as triers of the fact it might have acted otherwise in respect to the matters complained of. It will interfere only when it clearly appears from a consideration of the entire record that there has been an abuse of discretion.
 
 
 27
 Again, what would it avail if we meticulously and in detail set out the portions of the record which impel us to the conclusion that we feel that the record does not support these assignments of error? It is sufficient therefore to say we have given careful consideration to each an every one of these assignments and have carefully examined the entire record and from such examination thereof cannot say as a matter of law that it clearly appears that the trial court's exercise of discretion was arbitrary.
 
 
 28
 All the appellants filed an affidavit of bias and prejudice and asked the trial judge to disqualify himself. Complaint is made of an order denying the motion and refusing to step aside. When such an affidavit is filed pursuant to 28 U.S.C.A. § 144, stating facts which taken at their face value show bias and prejudice, it is the duty of the judge at once to step aside. All he may do is to examine the affidavit as to its legal sufficiency to comply with the statute on the basis of the facts therein stated. In doing this, he may not give consideration to the truth of falsity of the facts stated therein.[4] The affidavit must state facts and not mere conclusions. The affidavit in this case quoted at great length from colloquy between the court and counsel during various stages of the proceedings. While this colloquy shows that the proceedings were acrimonious at times and evidenced the existence of some feeling between the court and counsel, we do not think it is of such a nature as to show upon its face bias and prejudice. Reliance is also placed upon the excessive bond required in some instances; that all of appellants' motions were overruled; that the motions for judgment of acquittal and to dismiss were overruled without opportunity of argument and that the sentences were so excessive as to indicate personal bias and prejudice. Many of these events occurred after the beginning of the trial and could not have formed the basis of an affidavit of bias and prejudice before the beginning of the trial, but in any event and, without entering into a detailed discussion of each matter complained of, we think they relate largely to the exercise of discretion by the court and in themselves alone are not sufficient to show bias and prejudice. While the sentences imposed are very severe, they are in every instance within the legal maximum provided by statute. It cannot be said that standing alone the imposition of a sentence which the court had lawful authority to impose shows bias and prejudice.
 
 
 29
 It is further urged that the jury was not fair and impartial and that the verdicts were the result of bias and prejudice. There is no affirmative evidence in the record that any juror had a bias or prejudice against any of the defendants which would prevent him from discharging his duty as a juror. In support of the charge it is urged that the evidence could not support more than three counts on the substantive offenses against Eugene Smaldone, no more than one count on the substantive offenses against Clyde Smaldone, and no evidence sustaining the conviction against Michael J. Benallo, but that notwithstanding the jury returned a verdict of guilty on all counts against these defendants. This is urged as proof of bias and prejudice. We agree, as will be pointed out hereinafter, that there was no evidence to support a conviction on some of the substantive counts against Eugene Smaldone and no evidence to support the conviction of Michael J. Benallo. But that is not sufficient in itself to convict a jury of bias and prejudice. That merely shows that the jury erred in some of its conclusions. Standing alone it is not sufficient to show that its action was the result of bias and prejudice.
 
 
 30
 Appellants contend that the trial court committed reversible error in not affording them an opportunity to make a statement and to present information, if any, in mitigation of punishment before imposition of sentence. Rule 32(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., provides for an opportunity for a defendant to make a statement in his behalf before imposition of sentence. We think that the spirit of this rule should be observed and that before the imposition of sentence a defendant should be asked if he has anything to say before sentence is imposed. It does not, however, follow in all cases that a failure by the court to ask defendant if he has any statement to make results in a violation of the rule or denial of due process. It may appear from the record that defendant did not desire to make a statement. In such case, failure by the court to affirmatively ask whether he desired such opportunity would not constitute a violation of the rule. The judgment and commitment in each of these cases is on a printed form which contains a statement that the court asked defendants if they had anything to say before sentence was imposed. It is, however, urged that no such statement was in fact made by the court. An examination of the record contains no statement by the court at the time of sentence, asking defendants if they desire to make a statement, or any evidence from which it could be inferred that the court took such action. Neither, however, does the record contain anything tending to show that appellants asked or indicated that they desired to make a statement either in person or through competent attorneys representing them, who were then present in court. In the absence of such a request by competent counsel representing them at the time, we cannot say that they were not afforded an opportunity to be heard before sentence was imposed, had they desired such a hearing.[5]
 
 
 31
 Appellants also urge that Judge Ritter, who tried this case, was without power to impose sentence upon Eugene Smaldone and Clyde George Smaldone in Number 13,833, in which they entered their pleas of guilty before another district judge because, as is claimed, there is no showing that Judge Knous, who took the plea, was absent from the district or unable for any of the reasons set out in Rule 25, Federal Rules of Criminal Procedure, from imposing sentence. We think that what we said in Owens v. Hunter, 10 Cir., 169 F.2d 971, 972, is dispositive of this contention. There we said, 'And while ordinarily sentence should be imposed by the judge before whom the conviction was had, where there are two judges of the same court with concurrent jurisdiction, a judgment is not void merely because the trial was before one of the judges and the sentence was imposed by the other.' The sentences herein challenged were entered upon pleas of guilty and without the taking of evidence or hearing of witnesses. Under these circumstances it was not error for the trial judge to impose sentence, although the plea was taken before another judge.
 
 
 32
 Eugene Smaldone and Clyde George Smaldone urge that the court erred in refusing to sustain their plea of former jeopardy entered in causes Numbers 13,794, 13,795 and 13,800. Their position is that bringing them to trial on these indictments after they had pleaded guilty to conspiracy indictment Number 13,833 constituted double jeopardy.
 
 
 33
 The Government with commendable candor concedes that indictment Number 13,833 and indictment Number 13,800 charged the same conspiracy. It follows without more therefore that after they had entered their pleas of guilty to both counts of indictment Number 13,833 bringing them to trial on the two counts of indictment Number 13,800 constituted double jeopardy. The Government in its argument before our court in effect conceded that the sentences imposed on the two counts of indictment Number 13,800 are double sentences for the same offense, but seeks to avoid the effect thereof by stating that the Smaldones may not complain because no additional sentences were imposed in Number 13,800, in that the sentences therein were made to run concurrently to those imposed in Number 13,833 and also because service of sentence was suspended. But those judgments nonetheless constitute additional sentence. The constitutional inhibition of the Fifth Amendment is not against the imposition of a double sentence for the same offense, but is against trying one for the second time for the same offense.[6] The Fifth Amendment provides 'nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb'. That in plain language means that one may not be tried a second time for the same offense and that was done with respect to indictment Number 13,800 over the protest and objection of these two appellants. It was not error, however, to overrule the pleas with respect to indictments Number 13,794 and Number 13,795. In those two indictments these two appellants were charged with substantive offenses committed as a result of the conspiracy. These offenses were not identical with those charged in Number 13,833, to which they had pleaded guilty.[7]
 
 
 34
 Indictment Number 13,794.
 
 
 35
 Appellant, Eugene Smaldone, was convicted on all sixteen counts of indictment Number 13,794, charging him with the commission of substantive offenses, and received consecutive sentences on each count thereof. He urges that the evidence at most will support conviction and sentencing on not more than four counts. This assignment makes necessary a critical analysis of all the evidence offered in support of these sixteen counts.
 
 
 36
 Count one charged him with endeavoring to corrupt a juror and thus impeding the administration of justice, in violation of Section 1503, on or about June 5, 1953. Count nine, based upon the same transaction set out in count one, charged that on or about June 5, 1953, he violated Section 206 by offering a bribe to a juror. The evidence shows that on or about June 4, 1953, two days after his first trial on tax evasion charges had ended in a mistrial, Fiore Smaldone, a first cousin of Clyde and George, had contacted Mrs. Caroline A. Baer, a dismissed juror in that first trial. He told her that the boys were in a little trouble and asked her to 'hang the jury.' There is no evidence that he offered her a bribe of any kind to do so.
 
 
 37
 The evidence was sufficient to sustain a charge under Section 1503 of endeavoring to obstruct the administration of justice, since Eugene Smaldone's case was still pending in federal court. This was sufficient to sustain the charge, even though the juror had been dismissed, since the essence of the offense was the endeavor to obstruct justice.[8]
 
 
 38
 The outlined evidence, however, was not sufficient to sustain the charge of bribing or attempting to bribe a juror laid in count nine. To establish that offense there must be proof of more than an attempt to corrupt.[9] It requires an offer of money or a thing of value.
 
 
 39
 Count two charged an attempt to impede the administration of justice on or about June 6, 1953, in violation of Section 1503, and count ten based on the same transaction charged giving and offering to give money as a bribe to a juror, in violation of Section 206. Count ten is predicated upon the same acts set out in count two. The evidence shows that on June 6, 1953, Michael Benallo contacted Merle D. Hall, a juror on the panel called for the Smaldone income tax case. Benallo introduced himself, saying that he had worked at the fish hatchery and asked Hall if he remembered him. Hall remarked that he did not. Benallo then stated he was just looking up some of the boys he used to know. Nothing was said about jury service. This is the uncontradicted evidence submitted by the Government and is all the evidence as adduced either from Hall or his wife, Mrs. Faye Hall, or his business partner. So here there is no direct evidence or evidence from which a fair inference may be drawn that Benallo's purpose was to interfere with the administration of justice in the Smaldone case by bribing or offering a bribe to juror Hall. It may be suspected that Benallo had an evil purpose in approaching Hall, but mere suspicion does not rise to the dignity of proof.[10] There was therefore no evidence supporting the conviction on either of these two counts. Count three and the corresponding count eleven based upon the same transaction charged Eugene Smaldone with violating Section 1503 and Section 206 on or about June 23, 1953, in the same manner as set out in the previous counts. The evidence to support these charges is that W. E. Lawson, operator of the Oldsmobile Agency in Longmont, Colorado, contacted Owen Spencer, a member of the jury panel about the purchase of a new car. During the conversation, Lawson told Spencer that Eugene Smaldone was not guilty and that he was being framed; that the Smaldones were nice fellows; that they had always treated him nice and he had done lots of business with them. Lawson told Spencer that he knew Spencer was on the jury. When asked how he knew this, he replied that Clyde Smaldone had told him when Clyde had purchased a car from him. At the time of this conversation, Spencer had actually already been dismissed from the jury. Lawson testified that the Smaldones had asked him on June 19 or 20 if he would talk to Spencer if Spencer got on the jury. Lawson replied that he would not. The evidence further shows that the Smaldones contacted Lawson later about three different men on the list of prospective members. He knew one of them and they asked him to contact that man to ask if he would hang the jury if he were selected as a juror. This effort on the part of the Smaldones to seek through Lawson to influence Spencer, a member of the jury panel, in spite of Lawson's protestation of an innocent intent of contacting Spencer, is sufficient to support a charge of endeavoring to impede the administration of justice under Section 1503 within the broad interpretation of the word, embracing any effort or essay to accomplish the evil purpose that the statute seeks to prevent,[11] but was again wholly insufficient to support a substantive charge under count eleven of bribery or attempted bribery.
 
 
 40
 Count four charging Eugene Smaldone with violation of Section 1503 on or about July 3, 1953, and count twelve based upon the same transaction charged a violation of Section 206 of bribery or attempted bribery of a juror. A careful search of the records fails to reveal any evidence reasonably tending to support either of these charges and the judgments based thereon must, therefore, fail.
 
 
 41
 Count five charged Eugene Smaldone with violating Section 1503 on or about September 2, 1953, and count thirteen based upon the same transaction charged him with violating Section 206. The evidence in support of these two counts shows that Eugene Smaldone in the presence of his brother, Clyde, requested Raymond J. SaBell to call on Frank P. Rossi, a juror and to offer him 'three fifty' to stay on the jury. SaBell called upon Rossi 'the last week of August or the first week of September,' in compliance with this request. Rossi told SaBell that he was taking inventory then and would let him know later. SaBell reported to Eugene that everything was all right. This evidence is sufficient to sustain the conviction on both of these counts.
 
 
 42
 Count six charged Eugene Smaldone with violating Section 1503 on or about September 8, 1953, and count fourteen based on the same transaction charged a violation of Section 206. The evidence in support of these two counts is that William Calvaresi contacted Effie B. Alsup, a prospective juror, on September 7, 1953, and again on September 9, 1953, advising her that Eugene Smaldone had asked him to offer her $250 to 'sit on the jury.' This evidence is sufficient to support the conviction on both of these counts.
 
 
 43
 The Government again with commendable candor at the time of the oral argument stated that counts seven and eight charged the same offense. It follows therefore that they were duplicitous and that the conviction and sentence on count eight cannot stand. Examination of the indictment also reveals that count sixteen of the indictment is predicated upon the same transaction that is set out in count fifteen. The dates are the same; the charge and allegations are the same. It therefore follows as a matter of course that if counts seven and eight are duplicitous, counts fifteen and sixteen are likewise duplicitous and that the judgment imposed on count sixteen must likewise fall. It is only necessary therefore to consider whether the evidence is sufficient to sustain the judgment entered on counts seven and fifteen. Count seven charges the violation of Section 1503 on or about September 10, 1953. The evidence shows that William Calvaresi contacted Effie B. Alsup, a prospective juror, on two occasions, first on September 9, 1953, and again on September 10, 1953. The transaction on September 9, 1953, in which he advised her that Eugene Smaldone had asked him to offer her $250 to sit on the jury is sufficient to support the charge laid in both count seven and count fifteen, predicated upon the same transaction and charging a violation of Section 206.
 
 
 44
 Summing up, we hold that the record supports the verdict and judgment of conviction entered thereon on counts one, three, five, six, seven, thirteen, fourteen and fifteen, but that there is no evidence to support the verdict or judgment of conviction entered thereon on counts two, four, eight, nine, ten, eleven, twelve and sixteen and that those judgments cannot stand.
 
 
 45
 Indictment Number 13, 795.
 
 
 46
 Clyde George Smaldone contends that the evidence is insufficient to convict him of more than two of the six counts of the indictment. Counts one and three of the indictment charged him with the same violations with which Eugene Smaldone was charged in counts five and thirteen of indictment Number 13,794. The evidence shows that the efforts by Eugene Smaldone to induce Raymond J. SaBell to call on Frank P. Rossi and offer him $350 occurred in the presence of Clyde George Smaldone. This is sufficient to make him a party thereto and to sustain the conviction and judgment of sentence on counts one and three.
 
 
 47
 Counts two and four are predicated upon the same acts set out in counts seven and fifteen of indictment Number 13,794. The evidence is sufficient to establish Clyde's connection with that transaction and thus sustain his conviction and judgment of sentence on counts two and four.
 
 
 48
 Counts five and six of the indictment charged the same offense charged against Eugene Smaldone in counts six and fourteen of indictment Number 13,794 and is predicated on the same evidence set out in relation to those counts. The record shows that Clyde participated in these transactions and was a party thereto. In Number 13,795 we find that the verdict on each of the six counts of the indictment is supported by competent evidence and the judgments based thereon are valid judgments.
 
 
 49
 Michael J. Benallo.
 
 
 50
 On behalf of Michael J. Benallo, it is urged that the court erred in overruling his motion for a directed verdict of acquittal at the conclusion of the Government's case in Number 13,800.
 
 
 51
 Benallo was charged only under Number 13,800 with being a member of the conspiracy. He was not charged with having committed a substantive offense. Merle D. Hall, who was a member of the jury panel in question, testified that on June 6, 1953, while at work in his shop at Fort Collins, a man came in and introduced himself as Mike Benallo; that he stated that he had been at the fish hatchery at Fort Collins and wanted to know if Hall remembered him. When Hall replied that he did not know him, Benallo said he was at Fort Collins looking up some of the boys he used to know. That was the substance of the conversation. Nothing was said about jury service or Hall's connection with jury service or about the Smaldone case. To make one a coconspirator or a member of a conspiracy, the evidence must establish some connection on his part with the conspiracy or the members thereof.[12] The record does not reveal a single bit of evidence that Michael J. Benallo ever met with any of the other party defendants or that he ever talked to them about the case or that he ever talked to any juror about the case pending against the Smaldones. His trip to Fort Collins may give rise to the suspicion that he went there to contact Hall about the Smaldone case, but a mere speculation or suspicion is not sufficient. Wherever a circumstance relied on as evidence of criminal guilt is susceptible of two inferences, one of which is favorable to innocence, such circumstance is robbed of all probative value and is insufficient to support a judgment of guilt.[13] We think the motion for a directed verdict in Number 13,800 with respect to Michael J. Benallo was good and should have been sustained.
 
 
 52
 Contempt Proceedings.
 
 
 53
 In addition to the criminal trial, appellants were cited to appear and show cause why they should not be found guilty of contempt of court. The acts upon which the contempt proceedings were predicated were the same acts upon which they were prosecuted in the criminal trial. Appellants challenge the jurisdiction of the trial court to summarily try them in the contempt proceeding on the ground that the acts relied upon did not occur within the actual presence of the court, or so near thereto as to confer jurisdiction on the court under 18 U.S.C.A. § 401(1) to try them in the summary contempt proceeding. Their objections were overruled and the trial court summarily heard and determined the charges and found appellants guilty of contempt and imposed additional sentences upon them. The pertinent provision of 18 U.S.C.A. § 401(1) gives the court power to summarily try acts committed 'in its presence or so near thereto as to obstruct the administration of justice'. This has been the statutory authority for summary contempt proceedings since the Act of 1831. It is conceded that the acts upon which the proceedings were predicated did not occur in the presence of the court. In order therefore to uphold the action of the court in this respect, it must be found that they occurred 'so near thereto as to obstruct the administration of justice.'
 
 
 54
 The power of federal courts to issue attachments and inflict summary punishments for contempts of court is a narrow power, much narrower than that in most state courts. The history of our present statute giving federal courts this power is reviewed at length in the late case of Nye v. United States, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172. The power as it existed prior to the Act of March 2, 1831, as it existed under the Act of 1831, and as it exists under the amendments to that Act, is recited in detail by the Supreme Court in the Nye decision. It is pointed out that the Act of 1831 had for its object restricting the power of federal courts in this respect as it had been expanded by judicial interpretation and application and that this purpose was continued in Section 268 of our Judicial Code.[14]
 
 
 55
 The court in the Nye case makes it clear that the pertinent terms are to be construed as having a geographical meaning and not a casual connotation. The court observed that of late lower courts have been giving the terms a broader and expending meaning as had the Supreme Court in the case of Toledo Newspaper Co. v. United States, 247 U.S. 402, 38 S.Ct. 560, 62 L.Ed. 1186. The court in the Nye case rejected this broadening interpretation, including the interpretation which it had placed on this power in the Toledo Newspaper Company case, and readopted the views expressed in the case of Ex parte Poulson, 19 Fed.Cas. p. 1205, No. 11,350, where it was held that the first section of the Act "alludes to that kind of misbehavior which is calculated to disturb the order of the court, such as noise, tumultuous or disorderly behavior, either in or so near to it as to prevent its proceeding in the orderly dispatch of its business." (313 U.S. 33, 61 S.Ct. 816.) The court in the Nye case further states that 'The phrase 'so near thereto as to obstruct the administration of justice' likewise connotes that the misbehavior must be in the vicinity of the court.' And that 'It is not sufficient that the misbehavior charged has some direct relation to the work of the court. 'Near' in this context, juxtaposed to 'presence', suggests physical proximity not relevancy.' The court observes that 'If that phrase be not restricted to acts in the vicinity of the court but be allowed to embrace acts which have a 'reasonable tendency' to 'obstruct the administration of justice' then the conditions which Congress sought to alleviate in 1831 have largely been restored.'
 
 
 56
 We think it is clear from the language of the Nye case that in order to give the court power to summarily try persons for contempt the acts charged must have been in the physical presence of the court or so near thereto as to actively interfere with the trial of the court. It is not sufficient that the impact of acts committed away from the court is carried over into the court room, makes itself felt therein, and has a tendency to obstruct the administration of justice.
 
 
 57
 The court concluded that it had jurisdiction to proceed as it did because the contempt actually operated within the court room and in the presence of the court. That is just another way of saying that the acts committed miles away from the presence of the court made themselves felt in the court room throughout the trial but that, under the decision of the Nye case, supra, is not sufficient.
 
 
 58
 We think the case of O'Malley v. United States, 8 Cir., 128 F.2d 676, upon which the trial court relied, is clearly distinguishable from the Nye case and from the facts in this case. There a case was pending in the federal court against numerous insurance companies to enjoin the collection of increased insurance premiums. While that case was pending, certain parties in a hotel room removed from the place of the trial concocted a fraudulent scheme by which through the payment of a large sum of money, some to the Insurance Commissioner O'Malley, an agreement would be executed to compromise said litigation. Such an agreement was reached. Bribes were paid and the attorneys representing the insurance commissioner and the companies came into court and, without knowledge of the fraud and bribery, and in good faith represented to the trial judge that the settlement was a good one and should be approved. This was done and the litigation was dismissed. When the fraud was discovered, the trial judge found the parties guilty of contempt in summary contempt proceedings. All that was held in that case was that the acts of contempt consisting of the fraudulent representations made to the court were made by the parties while actually present in court by their attorneys and that therefore the acts of contempt occurred in the presence of the court itself.
 
 
 59
 Judgments.
 
 
 60
 In Number 13,800 the judgment of sentence of the court against Eugene Smaldone and Clyde George Smaldone is reversed and as to them to cause is remanded with directions to dismiss. Also in Number 13,800 the judgment against Michael J. Benallo is reversed and as to him the cause is remanded with directions to dismiss. In Number 13,795 the judgment against Clyde George Smaldone is affirmed. With respect to the contempt proceedings, the judgments against all of the defendants are reversed and the proceedings are remanded with directions to dismiss.
 
 
 61
 Where a sentence is in part invalid and the invalid portion is separable from the valid portion, the modus operandi to make the correction is not uniform. In some instances the case has been remanded to the trial court to make the corrections,[15] while in others the correction is made in the appellate court.[16] In some of the cases in which the case was remanded to make the corrections in the trial court, the appellate court recognized power it itself to make such correction.[17]
 
 
 62
 We have held in Number 13,794 that the judgment of sentence imposed on appellant, Eugene Smaldone, on counts two, four, eight, nine, ten, eleven, twelve and sixteen are invalid and must be set aside. These sentences both as to prison terms and fines are separate and distinct from the valid counts and we see no reason why the correction of the judgment appealed from in that case should not be made in this court. It is therefore the judgment of the court that the judgments against Eugene Smaldone imposed on him by counts two, four, eight, nine, ten, eleven, twelve and sixteen, both as to prison term and fine be and each of them is hereby set aside and held for naught and that in all other respects the judgment appealed from by him in said cause be and the same is hereby affirmed.
 
 
 
 [1]
 Elder v. United States, 9 Cir., 142 F.2d 199; Muench v. United States, 8 Cir., 96 F.2d 332; Kane v. United States, 8 Cir., 120 F.2d 990
 
 
 [2]
 Emphasis supplied
 
 
 [3]
 42 C.J.S., Indictments and Information, § 133, p. 1024; Creswell v. State, 161 Tenn. 320, 30 S.W.2d 247; Bosco v. State, 157 Md. 407, 146 A. 238; Pettibone v. United States, 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419; Wharton C.R. & P.R., Section 164.'
 
 
 [4]
 Scott v. Beams, 10 Cir., 122 F.2d 777; Inland Freight Lines v. United States, 10 Cir., 202 F.2d 169
 
 
 [5]
 See Shockley v. United States, 9 Cir., 166 F.2d 704; Savage v. Dist. of Columbia, D.C.Mun.App., 54 A.2d 562
 
 
 [6]
 Ex parte Lange, 18 Wall. 163, 21 L.Ed. 872; Hunter v. Wade, 10 Cir., 169 F.2d 973, 8 A.L.R.2d 277; United States v. Lewis, D.C., 114 F.Supp. 512
 
 
 [7]
 Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489; United States v. Rabinowich, 238 U.S. 78, 35 S.Ct. 682, 59 L.Ed. 1211; Doherty v. United States, 10 Cir., 193 F.2d 487; Upshaw v. United States, 10 Cir., 157 F.2d 716; Robinson v. United States, 10 Cir., 143 F.2d 276
 
 
 [8]
 United States v. Russell, 255 U.S. 138, 41 S.Ct. 260, 65 L.Ed. 553; Broadbent v. United States, 10 Cir., 149 F.2d 580; Catrino v. United States, 9 Cir., 176 F.2d 884
 
 
 [9]
 Slade v. United States, 10 Cir., 85 F.2d 786
 
 
 [10]
 Garrison v. United States, 5 Cir., 163 F.2d 874; Colbaugh v. United States, 10 Cir., 15 F.2d 929
 
 
 [11]
 United States v. Russell, 255 U.S. 138, 41 S.Ct. 260, 65 L.Ed. 553; Broadbent v. United States, 10 Cir., 149, F.2d 580
 
 
 [12]
 Dickerson v. United States, 8 Cir., 18 F.2d 887; Mickle v. United States, 8 Cir., 157 F. 229; Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680
 
 
 [13]
 Dickerson v. United States, 8 Cir., 18 F.2d 887; Hyde v. United States, 4, Cir., 15 F.2d 816; United States v. Currier Lumber Co., D.C., 70 F.Supp. 219, affirmed, 1 Cir., 166 F.2d 346; Cravens v. United States, 8 Cir., 62 F.2d 261; Spalitto v. United States, 8 Cir., 39 F.2d 782
 
 
 [14]
 Section 268 was under consideration in the Nye case and differs in no material respect from 18 U.S.C.A. § 401(1), the present Act
 
 
 [15]
 Wechsler v. United States, 2 Cir., 158 F. 579; Jackson v. United States, 9 Cir., 102 F. 473; Kitt v. United States, 4 Cir., 138 F.2d 842
 
 
 [16]
 Spirou v. United States, 2 Cir., 24 F.2d 796; Goode v. United States, 8 Cir., 12 F.2d 742; Salazar v. United States, 8 Cir., 236 F. 541; Simmons v. United States, 5 Cir., 89 F.2d 591; Siglar v. United States, 5 Cir., 208 F.2d 865
 
 
 [17]
 Jackson v. United States, supra