396 F.2d 121
 Louis E. WOLFSON and Elkin B. Gerbert, Petitioners,
v.
Honorable Edmund L. PALMIERI, United States District Judge
for the Southern District of New York, Respondent.
 Dockets 32372, 32373.
 
 United States Court of Appeals Second Circuit.
 Petition for Mandamus Argued May 27, 1968.
Decided May 29, 1968.
 William O. Bittman, Austin S. Mittler, Hogan & Hartson, Washington, D.C., Edgar H. Brenner, Arnold & Porter, Washington, D.C., Chester Bedell, Bedell, Bedell, Dittmar & Smith, Jacksonville, Fla., for defendants-appellants, Wolfson and Gerbert.
 Paul R. Grand, Asst. U.S. Atty. (Robert M. Morgenthau, U.S. Atty. for Southern Dist. of New York, New York City), for appellee, United States.
 Before MOORE, FRIENDLY and KAUFMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Petitioners Louis E. Wolfson and Elkin B. Gerbert petition this Court to issue a writ of mandamus and/or prohibition or an order in the nature of such writs directing that the Hon. Edmund L. Palmieri recuse and disqualify himself from further participation in the case of United States v. Louis E. Wolfson, Elkin Gerbert, Joseph Kosow, Alexander Rittmaster, Marshall Staub, defendants (66 Cr. 832), now about to be tried in the District Court for the Southern District of New York, pursuant to Sections 144 and 455, Title 28, United States Code and the decision of this Court in United States v. Simon, 2 Cir., 393 F.2d 90, decided April 17, 1968.
 
 
 2
 A brief resume of the procedural facts is required as a background for decision.
 
 
 3
 The indictment in the present case (the Merritt-Chapman & Scott case) was returned on October 18, 1966, in which petitioners Wolfson and Gerbert, along with three other persons were charged with fraud in the purchase of stock of Merritt-Chapman & Scott and committing perjury in filing false reports with the Securities and Exchange Commission. Prior thereto, on September 19, 1966, the same grand jury had returned indictment No. 66 Cr. 720, United States v. Wolfson and Gerbert (the Continental Enterprises case), in which Wolfson and Gerbert were the only defendants and were charged with violating and conspiring to violate the registration provisions of the Securities Act of 1933 with respect to stock of Continental Enterprises.
 
 
 4
 On August 14, 1967, the Continental Enterprises case was assigned by the Judge of the criminal assignment part of the district court to Judge Palmieri for On August 18, 1967, the Merritt-Chapman & Scott case was also assigned by the same assignment Judge to Judge Palmieri. These assignments were made pursant to a policy wherein various district judges had made known to the Chief Judge at what periods they would be available for lengthy criminal trials.
 
 
 5
 On October 17, 1967, the defendants moved to challenge the assignment of these cases to the same judge which motion was denied on December 4, 1967, by Judge Palmieri.
 
 
 6
 The trial of the Continental Enterprises case commenced on September 6, 1967, and ended September 29, 1967, with the conviction of the two defendants, Wolfson and Gerbert. Sentence was imposed on November 28, 1967. An appeal from the judgment of conviction was argued on April 4, 1968, and is presently sub judice.
 
 
 7
 On February 13, 1968, in the Merritt-Chapman case by pre-trial motions, the defendants therein moved (1) for suppression of evidence; (2) Kosow and Staub only-- for a severance and separate trials as to them; (3) for change of venue; (4) Wolfson and Gerbert only-- for a continuance until after the decision of the appeal in the Continental Enterprises case and because of Wolfson's health; (5) for disclosure of statement; (6) for compliance with a bill of particulars order; (7) for the production of exculpatory evidence; and (8) to challenge the composition of the Grand Jury. The motions were denied except that a continuance was granted to June 12, 1968, (5) and (6) were granted in part; and (8) was held in abeyance awaiting a decision in a similar motion before Judge Tyler. The opinion is dated March 20, 1968. The motion for change of venue was based principally upon the allegedly extensive and prejudicial publicity which attended that petitioners' trial and sentencing on November 28, 1967, in the Continental Enterprises case. No motion of this group was addressed to any disqualification of Judge Palmieri to preside at the trial.
 
 
 8
 On April 17, 1968, this Court decided United States v. Simon, 2 Cir., 393 F.2d 90, wherein it dealt with the question of the desirability of the same judge presiding at a second trial of the same criminal case where such a trial becomes necessary. It concluded that 'it is the wiser practice, whenever possible, that a lengthy criminal case be retried before a different judge unless all parties request that the same judge retry the case,' and expressed the belief that the Judge 'will act pursuant to our views regarding the preferred practice in these matters, * * *.'
 
 
 9
 The next day, April 18, 1968, the defendants sought by motion to have Judge Palmieri disqualify himself on the basis of Simon. This motion was denied on April 24th on the ground that the situations were not parallel, and a petition for mandamus was dismissed by this Court on May 2, 1968, for lack of jurisdiction because no affidavit of bias or prejudice had been submitted. 394 F.2d 7. Petitioners promptly filed such a motion before Judge Palmieri, alleging both that the judge had a 'personal bias and prejudice' against them, 28 U.S.C. 144, and that he was disqualified under 28 U.S.C. 455 because a former law clerk is an assistant prosecutor and petitioners intend to claim prosecutional misconduct in the issuance of subpoenas. They also reiterated their contention as to the supposed controlling effect of United States v. Simon.
 
 
 10
 In denying petitioners' motion for disqualification, Judge Palmieri held that (1) the affidavit of bias and prejudice was legally insufficient; (2) the accompanying certificate of good faith was defective in that it was not made by the 'counsel of record'; and (3) the petitioners had exhibited a lack of diligence and improper use of Section 144. We find it unnecessary to consider the latter two holdings since we agree that the affidavit of bias and prejudice was not sufficient to require recusation. He also held that the claim under 455 was not made out, a ruling not seriously challenged on oral argument, and so plainly right as to require no discussion.
 
 
 11
 The principles governing the disposition of affidavits for disqualification under what is now 28 U.S.C. 144, were laid down in Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921), and recently applied by this court in Rosen v. Sugarman, 357 F.2d 794, 797-798 (2d Cir. 1966):
 
 
 12
 '* * * Although the facts stated in the affidavit are to be taken as true, the judge may inquire into their legal sufficiency. Indeed he must do so. There is 'as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is,' In re Union Leader Corp., 292 F.2d 381, 391 (1 Cir.), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed. 190 (1961); * * *. To be sufficient an affidavit must show 'the objectionable inclination or disposition of the judge'; it must give 'fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment.' (Berger v. United States,) 255 U.S. at 33-35, 41 S.Ct. at 233.'
 
 
 13
 Petitioners' allegations in their affidavit of bias and prejudice may fairly be broken down into three categories: (1) comments made at the Continental Enterprises trial; (2) rulings made at the Continental Enterprises trial; and (3) rulings made on pretrial motions, including the present motion for disqualification, in the Merritt-Chapman & Scott case.
 
 
 14
 Section 144[1] itself provides that the bias sufficient to disqualify must be 'personal.' It has been said that "Personal' is in contrast with judicial; it characterizes an attitude of extra-judicial origin, derived non coram judice. * * * The statute never contemplated crippling our courts by disqualifying a judge, solely on the basis of a bias (or state of mind, * * *) against wrongdoers, civil or criminal, acquired from evidence presented in the course of judicial proceedings before him.' Craven v. United States, 22 F.2d 605, 607-608 (1st Cir. 1927), cert. denied, 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739 (1927). The Supreme Court has stated that: 'The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.' United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). On the other hand, to establish the extrajudicial source of bias and prejudice would often be difficult or impossible and this is not required. Comments and rulings by a judge during the trial of a case may well be relevant to the question of the existence of prejudice. Conceivably also, and we shall assume this in petitioners' favor, as was done in Rosen v. Sugarman, supra, contacts during a trial might themselves have created such a degree of irritation with a party or his lawyer as to create the bent of mind to which the Supreme Court referred in Berger.
 
 
 15
 Petitioners have cited many comments made by Judge Palmieri during the course of the Continental Enterprises case. Some of these were in colloquies with counsel out of the presence of the jury and others were questions directed to certain witnesses in an effort to clarify testimony. As presented in the affidavit of bias and prejudice, these comments are asserted to evidence a personal hostility on the part of the judge. However, an examination of the entire record of the Continental Enterprises case reveals that these quotations were taken somewhat out of context. After reconstruction of the incidents complained of, we do not think they rise to the level of exhibiting a bent of mind impeding impartiality of judgment.
 
 
 16
 Almost all the rulings made during the Continental Enterprises case, have been raised on the appeal now pending in this Court. Wolfson and Gerbert argued (Point V) that 'Errors in evidentiary rulings, and the Court's apparent attitude towards appellants and their witnesses, combined to cause further prejudice to appellants in the eyes of the jury.' And in their reply brief, the points are made that they were deprived of a fair trial 'E. By the Trial Judge's Intervention in the Conduct of the Trial.' The instances to which they refer are some of those upon which they rely in their present petition. Although the government suggests that these incidents of judicial comments and relings should not be considered by us because they are now sub judice before another panel, we do so but only insofar as they might bear upon the prejudice issue. So viewing the matter, we find nothing to suggest bias or prejudice on the part of Judge Palmieri. Petitioners also allege that the sentences and fines as well as the bail set by Judge Palmieri were so excessive as to indicate personal bias and prejudice. These are not grounds for disqualification. Calvaresi v. United States, 216 F.2d 891, 900 (10th Cir. 1954).
 
 
 17
 Neither the manner nor the way in which Judge Palmieri has disposed of motions in the Merrit-Chapman & Scott case, including the present motion to disqualify and related motions, constitute a showing of prejudice sufficient to require disqualification.
 
 
 18
 In final analysis, the vital question is: what standards are to be applied? The only courtroom contacts stem from the Continental Enterprises case; the outside courtroom acts come from the various opinions on petitions to recuse. Although the asserted prejudice and error in the Continental Enterprises case is currently before another panel and undecided, query whether the degree required for reversal is, or should be, similar to that required on a disqualificaiton petition. In disqualification proceedings, the feelings of two personalities are involved-- the Judge whose judicial and personal honor are (in his opinion) unjustifiably attacked and the defendant who is about to face a trial, possible conviction and loss of liberty under circumstances which, rightly or wrongly, he feels will be adverse to his best interests. But the feelings of defendants which, of necessity, must be subjective, cannot without more be made the test. To be sure, there are circumstances in which a judge may wish to recuse himself although a legally sufficient affidavit of bias and prejudice could not be presented against him. But whether such considerations make it wise to withdraw must be left to the informed discretion of the individual trial judge.
 
 
 19
 It is no answer to refer to the large number of trial judges in the Southern District. Any defense counsel who is a veteran of the criminal courtroom knows (or thinks he does) the personal characteristics of each of the Judges, and could easily advise his client that he would be much better off with Judges A. B or C rather than D, E or F. The state of mind of the defendant cannot be made the test for the selection of the trial judge. On the other hand, if there be a real doubt created as to prejudice, this alone may be an important factor to be considered by the judge. Even Caesar's wife was not confronted with specific instances of specific acts. Although Berger, supra, 255 U.S. at 31, 41 S.Ct. at 230, indicates that possible appellate redress is inadequate, the court passing upon a petition must be furnished with objective facts upon which to base a proper conclusion. The issues in the Continental Enterprises and Merritt-Chapman & Scott cases are different but this fact is not controlling. If real prejudice exists against any defendant, the technical legal issues or the difference in crimes charged will not eliminate it. But in the absence of proof, there should be at least a presumption that the trial court will conduct an errorless trial; that with skilled trial counsel in the case he will avoid participation in the examination of witnesses except in the interests of clarity; that he will not by demeanor indicate any personal or hostile attitude toward the witnesses or the case; and that he will state fairly the issues in his charge. Like all presumptions, it should remain in effect until it is overcome by adequate proof. At the same time, the courtroom should not be made the arena for a contest wherein the contestants are the Judge and the defendant. In this delicate field, the matter must largely be left to discretion as the facts in each case dictate.
 
 
 20
 Much reliance is placed by petitioner on Simon, which involved the retrial of the same case by the same judge. That decision, as all these decisions must be, was based upon the particular facts there presented. To extend the rule there announced to the trial of different charges against the same defendants would take this Court much too far into problems necessarily left to the good judgment of the district judges.
 
 
 21
 No sufficient showing having been made to justify the granting of this petition, it is denied.
 
 
 
 [1]
 144. Bias or prejudice of judge Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding
 The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.