**Lawrence Clayton DARBY, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 6467.**

United States Court of Appeals
Tenth Circuit.

Oct. 28, 1960.

Joseph L. Smith, Albuquerque, N. M., for appellant.

James A. Borland, U. S. Atty., Albuquerque, N. M., for appellee.

Before HUXMAN, LEWIS and BREITENSTEIN, Circuit Judges.

HUXMAN, Circuit Judge.

Appellant, Lawrence Clayton Darby, has appealed from a judgment of conviction in the United States District Court for the District of New Mexico under an indictment charging him with knowingly transporting in interstate an automobile knowing the same to have been stolen.[1]

The facts are substantially these. On October 9, 1959, appellant purchased a 1957 Chrysler automobile from Whipple & Ruff Plymouth Center in Ventura, California. He gave in payment a check in the sum of $2,284.80 drawn by himself on the Wells Fargo Bank of San Francisco, California. He had opened his account on September 21, 1959, by depositing a check drawn by himself on the Bar Harbor Bank and Trust Company, Bar Harbor, Maine, in the amount of $25,000. The account in the San Francisco Bank was closed on September 25, 1959, when the check for $25,000, drawn on the Bar Harbor Bank, was returned and marked, "no account" and the check for $2,284.80, drawn on this account, was returned to the automobile agency for the reason that the account was closed. Thus, appellant never paid anything for the car which had been delivered to him. He was arrested in Deming, New Mexico, in possession of the car, and was charged, tried and convicted, as above stated.

Alleged errors in the course of the trial are urged for reversal. It is urged that a so-called "rap sheet" held in the hands of the prosecuting attorney, in view of the jury during cross-examination of appellant, constitutes reversible error. The "rap sheet" was an information sheet of the Federal Bureau of Investigation consisting of five typewritten pages. It contained information about alleged criminal activities of appellant. In cross-examining appellant as to eight convictions, the prosecuting attorney made use of this "rap sheet." It is stated that in cross-examining appellant with respect to eight prior convictions, the prosecuting attorney, with his back immediately to the front of the jury, and while holding the sheet in his hand, turned through the five pages, making no use of much of the material contained therein. The contention is that such action was fully visible to the jury who were left to speculate as to the remaining material in the report.

A motion was made at the conclusion of all the evidence for a mistrial on the grounds that prejudicial error was committed in permitting questions from the "rap sheet" which was easily available to the view of the jury, when defendant denied any connection with these offenses, and no attempt was made by the District Attorney to establish the commission of these additional offenses.

■■ No objection was made to the cross-examination of appellant at the time he was being examined by the District Attorney with respect to these matters. It was only after the cross-examination had been completed and after both appellant and appellee had rested that the issue was raised. In fact, it was only after the parties had returned from lunch when the motion for mistrial was made. But we do not rest our decision on the ground that the motion was not timely made. A considerable discretion is vested in the trial court in the conduct of a trial and in the examination and cross-examination of witnesses, and its deci-

[1]. 18 U.S.C.A. § 2312.

sions will not be disturbed on appeal unless clearly erroneous or prejudicial.[2] We do not think that the use of the "rap sheet" by the District Attorney prejudiced appellant in any way.

■ It is also contended that the court committed reversible error in permitting cross-examination of appellant with respect to prior convictions. Appellant was asked about eight previous felony convictions. He denied connection with respect to five of them. It is contended that the asking with respect to the five convictions, which he denied, without the production of evidence by the Government to support such convictions, constituted prejudicial error. Aside from the fact that no objections were made to these questions at the time they were asked, we are of the view that no prejudice resulted therefrom. The court fully instructed the jury with respect to these questions. It told the jury, "to disregard any questions that were asked of the defendant, regarding former convictions which were denied by the defendant." This instruction was clear and we cannot indulge a presumption that the jury did not understand it or disregarded it.

■ Finally, it is contended that the court, by its remarks, pressurized the jury to return an early verdict. This contention is predicated upon the following remarks. At 1:30 P.M., apparently when the court had reconvened, and while the jury was in the jury box, the court considered when the next case would be ready. The court said, "The balance of the jury, if you will come in around 3:00 o'clock, we ought to be ready to at least begin on this other case. It will be tried, won't it?" When the court received an affirmative answer, it said, "Well, I will tell you, I figure any way you look at it, that we ought to be ready to start it at 3:00 o'clock this afternoon, on that." These remarks were not addressed to the jury in this case. They were addressed to counsel and jurors who would par-

ticipate in the succeeding case. True, the court, in the presence of the jury, expressed the view that the jury in this case would perhaps complete its deliberation by 3:00 o'clock, but there was no suggestion that they should do so, nor did the court intimate that by then the jury would convict the defendant. The court's remark that he "figured any way you look at it," could be interpreted to mean that in any event acquittal or conviction might be reached by 3:00 o'clock. That the court did not intend to pressurize the jury is indicated by its further remark that, "We won't start the next case until you have arrived at a verdict." What constitutes undue pressure is discussed in numerous cases, but since it is our conclusion that no inference of undue pressure or in fact any pressure can be inferred from the court's remarks, it is not necessary to discuss them.

Affirmed.

2. Dickson v. United States, 10 Cir., 182 F.2d 131; Calvaresi v. United States, 10 Cir., 216 F.2d 891.