**UNITED STATES of America**

**v.**

**Jerome J. HASKELL.**

**Crim. No. 10306.**

United States District Court
D. Connecticut.
Jan. 29, 1963.

Robert C. Zampano, U. S. Atty., New Haven, Conn., for Government.

Irving I. Erdheim, of Erdheim & Armstrong, New York City, Angelo P. Costa, Bridgeport, Conn., for defendant.

TIMBERS, District Judge.

Defendant Jerome J. Haskell, after a ten day trial, was convicted by a jury of conspiracy to evade income taxes.[1] He was sentenced to one year and a day in jail, fined $5,000 and ordered to pay the costs of prosecution.

He has moved, pursuant to Rule 29, Fed.R.Crim.Proc., to set aside the verdict and enter judgment of acquittal; or, pursuant to Rule 33, for a new trial; or, pursuant to Rule 35, to reduce sentence.

The Government has moved to dismiss defendant's motions under Rules 29 and 33 on the ground they were not filed within the time prescribed by law and the Court therefore lacks jurisdiction.

1. 18 U.S.C. § 371; 26 U.S.C. § 7201.

## I

### DEFENDANT'S MOTIONS TO SET ASIDE VERDICT AND ENTER JUDGMENT OF ACQUITTAL OR FOR A NEW TRIAL AND GOVERNMENT'S MOTION TO DISMISS SAID MOTIONS

■ Upon return of the verdict November 2, 1962, the Court, on application of defendant's counsel, extended to November 15, 1962 his time to file motions pursuant to Rules 29 and 33. No motions were filed within the time extended. November 19, 1962, on application of defendant's counsel, the Court further extended to November 28, 1962 his time to file motions. Again December 3, 1962, on application of defendant's counsel, the Court further extended to December 10, 1962 his time to file motions. Defendant's Rule 29 and Rule 33 motions were filed December 7, 1962. Defendant does not allege newly discovered evidence as a ground for his Rule 33 motion.

The Government moves to dismiss these motions on the ground that defendant's failure to file them on or before November 15, 1962 caused the Court to lose jurisdiction over the motions and the Court's extensions of time to file the motions after November 15, 1962 were nullities.

The Government's position is correct.[2] Accordingly, defendant's motions pursuant to Rules 29 and 33 are dismissed.

Since defendant's motions, although not timely, raise issues with respect to (A) the Court's charge and (B) disclosure of defendant's criminal record, which were raised at the trial and presumably will be raised on appeal, a brief statement of the facts of record with respect to these issues may be in order.

### (A)

### COURT'S CHARGE

■ Defendant's chief criticism of the charge is directed at that portion, set out in the margin,[3] of the Court's preliminary remarks in an attempt to indicate to the jury the competing interests involved in this case. Defendant's motion papers make no reference to the balance of the Court's preliminary remarks, set out in the margin,[4] which im-

---

2. Rules 29(b), 33 and 45(b), Fed.R.Crim. P.; United States v. Smith, 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947); Mills v. United States, 281 F.2d 736, 738, 741 (4 Cir. 1960); United States v. Weiss, 168 F.Supp. 728, 729–730 (W.D. Pa.1958).

3. Tr. 1249–1250:
"Now, preliminarily, before taking up the statute which is the basic point to begin with in this case, let me just say preliminarily that I believe all of us, counsel on both sides, you ladies and gentlemen, and the Judge, are in accord that this is an important case. An important case to both sides.

"What are the critical, competing interests involved? On the one hand, the Government is concerned, and rightfully so, that the revenue laws of the United States be enforced, that they not be violated. There is, in the language of the Supreme Court of the United States, no more serious crime than the crime of defeating or evading taxes or a conspiracy to do so.

"The reason for rigorous, strict enforcement of the Internal Revenue laws is perfectly obvious to all of us. All we have to do is recount the events of the last few weeks, even during the period that this case has been on trial. We all recognize, the defendant, the Government, their counsel, all of us, that but for the impartial, vigorous, intelligent enforcement of the revenue laws of the United States, we would be in a sorry situation. Certainly the liberty of all of us, indeed, the liberty of the free-speaking world, in a very real sense, is keyed to the proper enforcement of our own Internal Revenue laws.

"In short, to strike at or evade income taxes, is to strike at the jugular vein of our American system of government. That's the interest of the Government in this case, and it is the interest of all of us."

4. Tr. 1250–1252:
"On the other hand, the other competing interest here, and of equally vital concern to all of us, and particularly to

mediately follows the portion complained of.

At the conclusion of the charge when defendant's counsel took exception to that portion of the charge here complained of (Tr. 1347–1348), the Court sustained the exception (Tr. 1360–1361), called the jury back before it began to deliberate, and gave the following instruction (Tr. 1365):

"THE COURT: Good evening, ladies and gentlemen. I think this will be quite brief. Since the charge was completed, as I told you, counsel have had an opportunity to direct the Court's attention to certain matters that they have a right to do, exceptions have been taken, objections noted, and so forth.

"The upshot of which is, there are three corrections, additions, changes in the charge that I would like to bring to your attention.

you ladies and gentlemen, in weighing the evidence, returning your verdict, is the interest of the individual in his relations with the Government.

"In this case, the interest of Mr. Haskell, as a businessman, has a perfect right to carry on his business as a free citizen without interference from, or interruption in the proper conduct of his business, from any source, let alone his own Government. And more particularly and specifically, in view of the charges that have been brought against him by the Government in this case, it becomes our joint responsibility in considering at this stage of the case the evidence and the applicable law, and, ultimately, your sole responsibility to consider the vital interests of the individual Haskell, as a defendant here on trial.

"He has the right, having been charged as he has, under this indictment, to certain basic fundamental rights which are just as basic and fundamental as anything in our entire system of Government —the right to a fair trial.

"One of the most precious rights we have, going back, as you know, many, many years, and long before the beginnings of this country. The right to a jury trial was the very genesis, core, important part of our Declaration of Independence, written into the Constitution of the United States. This proceeding in this Court, and more particularly your

"Number one, at the beginning of the charge, when I spoke to you sort of informally, indicating the competing interests involved in this case, I made the following statement to you, which I should like to retract and ask you to totally disregard it. It is this statement in which I said, 'There is, in the language of the Supreme Court of the United States, no more serious crime than the crime of defeating or evading income taxes, or a conspiracy to do so.'

"Without burdening you with the details for it, I ask you to totally disregard that statement."

### (B)

### DISCLOSURE OF DEFENDANT'S CRIMINAL RECORD

Defendant's claim that he was prejudiced by the circumstances under

function as jurors, is just about as critical a part of American life as I can visualize.

"If an enemy were to strike at our society, one of the very first things that would be stricken down would be the right to a jury trial. The right to a jury trial is not just an empty phrase, or a dramatic, glamorous thing that is perhaps blown up on certain TV programs.

"Here you have the defendant's right, first, to a public and speedy trial, the right to be tried by a jury of his peers, the right to confront witnesses called against him, the right, through his lawyer, to cross-examine witnesses, call witnesses on his own behalf, and, finally, to have you ladies and gentlemen, here to determine his case, giving not just lip service, but full impact, giving him the full benefit of the triumvirate of his basic rights, namely, the presumption of innocence; the requirement that the Government shoulder the burden of proof on every issue in the case from the beginning, throughout your deliberations; and the requirement that the Government prove its case beyond a reasonable doubt.

"Now, those are the competing interests here, and I think it is perhaps a healthy thing to consider that background as a backdrop against which to consider the specific charges here, the principles of law applicable and, finally, the facts."

**538**

which his criminal record was disclosed at the trial, may perhaps be best evaluated in the light of the following facts of record.

1. First reference to defendant's criminal record was made by defendant's counsel on his direct examination of defendant. Defendant testified on direct examination that in 1934 or 1935 he was "convicted of a crime of petit larceny" and that since 1934 or 1935 he had not been convicted of any crime except speeding (Tr. 866–867). It is to be noted, as presently will appear, that defendant's testimony on direct examination was incorrect (i) as to the date of his conviction for petit larceny and (ii) as to his record being clear since 1934 or 1935 except for a speeding conviction. It should be noted further that it was defendant—not the Government—who injected into this case his convictions for petit larceny and speeding.

2. On cross examination, defendant was asked by the United States Attorney, without objection by defendant's counsel, whether he had not been convicted of grand larceny rather than petit larceny and whether the conviction had not been on August 26, 1942 (Tr. 1028, 1032). Defendant denied any conviction of grand larceny.

3. The record shows that defendant's counsel was apprised about a week earlier (Tr. 1033, 1108) by the United States Attorney of the latter's information that defendant had been convicted of grand larceny and of the Government's intention to ask defendant about this conviction at the trial (Tr. 1112–1114):

"MR. ZAMPANO: I think, your Honor, I should say this: A copy was not furnished, but I did inform Mr. Costa of the grand larceny conviction, that I thought Mr. Haskell had.

"At that time—and he is here, and we can ask him—he said, 'May I'—'Would you give me the exact date, please, and the place?' and I certainly did. And I believe we discussed some of the other parts of the record that I could not get in.

"I believe at that time Mr. Costa was surprised at this record.

"MR. COSTA: That part is absolutely true, if your Honor please. I did merely want to state for the information of the Court, and for the record, that the reason I took issue with Mr. Zampano's remark this morning concerning this paper is that I never saw the paper. But Mr. Zampano did inform me of this grand larceny question, along with some other questions.

"I told Mr. Zampano at that time that I would discuss it with my client, and delve into it. I did delve into that matter very deeply, and having delved into it, I was satisfied that Mr. Haskell had never been charged with—or, excuse me—had never been convicted of grand, but had been convicted of petty larceny.

"And I was aware that he was going to so testify.

"MR. ZAMPANO: You didn't tell me that.

"MR. COSTA: No. I did not tell you.

"MR. ZAMPANO: Because, as an officer, your Honor, if I had the slightest question, I certainly would never have asked this man this question."

4. The "paper" referred to is the standard FBI arrest record (sometimes described as a "rap sheet") relating to defendant.[5] Of the four arrests for grand larceny, the one about which the

5. Government Ex. K for identification, copy of which is herewith attached.

United States Attorney questioned defendant an cross examination is the third item on the first page, bearing the following legend:

| Contributor of Fingerprints | Name and Number | Arrested or Received | Charge | Disposition |
|---|---|---|---|---|
| | | * * | * | |
| PD, New York, N. Y. | Jerome Haskell #B-211062 | 8/26/42 | G.L. | 1 yr. prob. |
| | | | | 10–1–42 sent susp 1yr pro prob by Judge CoCrt on chg of GL and PL |
| | | * * | * | |

---

5. When defendant denied having been convicted of grand larceny, the Court sustained the objection by defendant's counsel to the admission of the entry set forth above from Government's Exhibit K for identification (Tr. 1032–1034) and stated that "The Court assumes that each of these questions asked by the Government on the subject of Mr. Haskell's alleged prior criminal record will be the subject of further proof—by the Government" (Tr. 1034).

6. Under further cross examination, defendant admitted that his testimony on direct examination about his criminal record was not correct (Tr. 1064–1065). Over repeated objections by defendant's counsel (Tr. 1065–1072), the Court allowed defendant to correct his testimony in any way he wished (Tr. 1062–1075). Defendant explained the speeding conviction he had volunteered about on direct examination (Tr. 1065–1067) and said he was not sure of "the exact year of the conviction for petty larceny * * * I just took a guess." (Tr. 1074). Objection by defendant's counsel was directed exclusively at the reference to a motor vehicle violation (Tr. 1070) which defendant insisted upon explaining after having first introduced the subject on direct examination.

7. Immediately after the next recess the United States Attorney informed the Court, in the absence of the jury, that an FBI check, made following defendant's denial of any conviction of grand larceny, disclosed that in 1942 defendant had been indicted for grand larceny but had pleaded guilty to petit larceny, referring to the third item on Government's Exhibit K for identification set forth in paragraph 4 above (Tr. 1107–1109). The United States Attorney requested the Court promptly to inform the jury that the Government conceded defendant was convicted of petit larceny, not grand larceny (Tr. 1109).

8. In response to the Court's inquiry of defendant's counsel as to whether he wished to have the Court instruct the jury in accordance with the Government's request or whether nothing further should be said on the subject (Tr. 1110–1112, 1114–1123), defendant's counsel replied (Tr. 1123):

"MR. ERDHEIM: No, I take neither suggestion. I say to the Court—I cannot say to the Court at this time that you should instruct the jury in the manner in which you did. Because if I do that, your Honor, in essence, I am assenting to your Honor's procedure, which I cannot do. I cannot ask your Honor to stay silent, because I then would be assenting to such procedure. I must keep quiet further, with respect to this particular position. I do that, with the

greatest of respect for this Court, your Honor."

9. The Court thereupon called the jury into the courtroom and gave the following instructions (Tr. 1125–1130):

"THE COURT: I would like to say to the jury very briefly two things with respect to certain testimony that was given this morning on the subject of Mr. Haskell's alleged criminal record.

"Number one, I instruct the jury totally to disregard any reference to a conviction for grand larceny. As I recall the evidence, in short, on that, was that Mr. Haskell denied that he had ever been convicted of grand larceny.

"Government counsel have informed the Court right after the noon recess, and before you ladies and gentlemen came in, that on the Government's check this morning— or, this noontime—after this matter was raised, it has disclosed that Mr. Haskell was not convicted of grand larceny in August of 1942, which is the date referred to in the Government's question.

"Rather, according to information by the Government, which will be subject to verification by the Government before this case is closed, the record shows that at or about that time, August, 1942, Mr. Haskell pleaded guilty to a charge of petty larceny. So, without elaborating on this subject any further, I will ask each of you ladies and gentlemen to totally wipe the slate clean, so far as Mr. Haskell is concerned with respect to any reference, even in the Government's question, to a charge of grand larceny.

"What it amounts to, in short, is: The Government, having confirmed the correctness of Mr. Haskell's answer when he denied that he'd been convicted of grand larceny, and the Government, having brought that to my attention as promptly as Mr. Zampano was informed about it, I now bring it to your attention, and ask you to be scrupulously careful to disregard any reference to a conviction of grand larceny. It is not so.

"Secondly, on the subject of Mr. Haskell's past record, criminal record, there has been some reference to automobile violations, specifically a speeding violation.

"Now, normally, the Court would not have permitted that subject to have been gone into here. Convictions for speeding or traffic violation are not crimes involving moral turpitude, or have no bearing upon a witness's credibility, a defendant's credibility. I think we are all human. We know that we operate automobiles. Over the course of a lifetime, I suspect that each one of us or another had some sort of automobile violation, whether it be parking or going through a stop sign, or speeding.

"They are serious violations, but the point is, in a case of this sort, they cannot be used to impeach the credibility of a witness, particularly a defendant. The way that got in the case, if you recall, was that Mr. Haskell yesterday afternoon, when Mr. Erdheim was questioning him, when the question was asked by Mr. Erdheim of Mr. Haskell, to the effect: 'Is it true that you have not been convicted of anything since 1934?'

"And he said, 'Yes, except for speeding.'

"And that, in turn, gave rise to a chain of questions this morning.

"The reference to the traffic violation or speeding had nothing to do with his—it's not a part of the criminal record, and the Court didn't permit questions in that area on that ground at all. It was simply a point of reference that Mr. Haskell himself had raised, having fixed 1934 as a date forward of

which his record was clear, except for the speeding violation, we got into it.

"So let me just say, as Point No. 2, please, again, dismiss from your mind any reference to this speeding violation or motor vehicle violation of any sort. It has nothing to do with—it does not impugn or impeach his character, reputation, veracity, in any way, shape, or form.

"Finally, on the subject of Mr. Haskell's alleged criminal record, if there is any, I have ordered the Government, before this record is closed, to produce proof in the form of certified copies of any judgments of conviction that are to be relied upon by the Government.

"I would suggest to each of you ladies and gentlemen, you are intelligent people, you know the importance of this case to both sides, both Mr. Haskell and to the Government, just keep your minds completely open on the subject of alleged criminal records, until the proof is here. The Government, if the Government doesn't produce the proof, I will have something to say to you on that subject in due course.

"But there has been a certain amount of confusion we have gotten into stemming from questions put to Mr. Haskell on his direct examination, and stemming from the manner in which he answered those questions. It may or may not reflect on his credibility, but so far as what his criminal record is, I want to know what it is accurately, based on Court records.

"I think you ladies and gentlemen are entitled to the same type, same caliber of proof. It will be produced. If not, I will instruct you accordingly.

"So much for that subject."

10. At the next recess defendant's counsel dictated for the record a stipulation to the effect that defendant conceded that if an FBI agent were sent to New York he would obtain an exemplified copy of a judgment of conviction of defendant for petit larceny on August 26, 1942 (Tr. 1181–1182). This stipulation was accepted by the Court in lieu of a certified copy of the judgment (Tr. 1183). It was read to the jury upon its return to the courtroom (Tr. 1183–1184).

11. Immediately thereafter, defendant testified as follows in response to defendant's counsel's questions on redirect examination (Tr. 1184–1185):

"Q Now, this is the only conviction in all of—How old are you? Forty-nine years?

"A Forty-nine.

"Q —that you have had in your lifetime?

"A And it was suspended. Yes, sir.

"Q Yes.

"THE COURT: Speak up now, Mr. Haskell.

"THE WITNESS: Yes, sir."

12. There was no further reference to defendant's alleged criminal record during the remainder of the trial. At the conclusion of the Court's charge to the jury, defendant's counsel made the following request (Tr. 1351):

"I ask your Honor to charge this jury with respect to the defendant Haskell, that in a review of his evidence, the Government conceded that there were no crimes committed by the defendant Haskell and that the only crime committed by him was this misdemeanor sometime in 1941 or 1942."

13. The Court ruled that this request for additional charge would be granted (Tr. 1361–1362):

"I also will grant Mr. Erdheim's request for additional charge, this is Item No. 14, third from the last requested, namely, that I instruct the jury that the Government has conceded that Mr. Haskell committed no crimes—has been convicted

of no crimes subsequent to the misdemeanor of petit larceny, of which he was convicted in 1942.

"MR. ERDHEIM: Or, your Honor—may I interrupt for a moment? Thank you.

"Or prior or subsequent to that. In other words, by your statement—subsequent—your Honor, it might mean that there may have been a crime prior to 1941 or 1942. Was that the date, Bob?

"MR. ZAMPANO: I have no objection to that.

"THE COURT: As I understand, the stipulation here yesterday was that that is the only conviction of record, and it was for petit larceny, which is a misdemeanor and it did occur in August of 1942.

"MR. ZAMPANO: That's correct, your Honor."

14. When the jury was called back for further instructions before it began to deliberate, the Court gave the following instruction (Tr. 1365–1366):

"Number two, I inadvertently omitted to instruct you when I charged you with respect to the stipulation entered into by counsel yesterday regarding Mr. Haskell's prior criminal record. As you will recall, I believe this stipulation was dictated on the record by Mr. Erdheim and read to you. It is, in substance, this: That the only conviction of record against Mr. Haskell is for a misdemeanor, petty larceny, in August, 1942.

"Aside from that misdemeanor, he has no criminal record whatsoever, and I so charge you."

As later disclosed by defendant's presentence report, this charge regarding defendant's criminal record was more favorable than the facts warranted.

6. Cf. Michelson v. United States, 335 U.S. 469, 484, 69 S.Ct. 213, 222, 93 L.Ed. 168 (1948) ("Defendant, on direct ex-

To summarize: the subject of defendant's criminal record was first introduced by defendant's counsel on his direct examination of defendant;[6] the United States Attorney, in an attempt to correct what defendant admitted to have been errors in his direct examination regarding his criminal record, inadvertently—and defendant concedes it was inadvertently done—asked defendant if he had not been convicted of grand larceny; this inadvertent reference to a grand larceny conviction was based on an FBI "rap sheet" which indicates a grand larceny conviction; defendant's counsel, having been apprised a week earlier by the United States Attorney of the latter's belief that defendant had been convicted of grand larceny, said he would "delve into it"; defendant's counsel "did delve into that matter very deeply," as a result of which he "was satisfied that Mr. Haskell had never * * * been convicted of grand, but had been convicted of petty larceny" and "was aware that he was going to so testify"; but the United States Attorney was not so informed by defendant's counsel; the United States Attorney, promptly upon being informed that defendant had not been convicted of grand larceny, requested the Court immediately to so inform the jury; the Court did so inform the jury; defendant's counsel dictated for the record a stipulation, which thereafter was read to the jury, that defendant had been convicted of petit larceny in New York on August 26, 1942; on redirect examination, defendant testified this was the only conviction during his lifetime and it was suspended; at the request of defendant's counsel at the conclusion of the charge, the Court further charged the jury that "The only conviction of record against Mr. Haskell is for a misdemeanor, petty larceny, in August, 1942. Aside from that misdemeanor, he has no criminal record whatsoever, and I so charge you"; so in the end defendant was presented to the jury, at the request of his counsel, in a

amination, voluntarily called attention to his conviction twenty years before.")

light more favorable than that to which he was entitled.

This is not a case of deliberate, intentional [7] reference by a United States Attorney before a jury to prior criminal activity of a defendant known to the United States Attorney to be inadmissible. Here the conduct of the United States Attorney at every stage of the proceedings with respect to defendant's criminal record was motivated by fairness: he apprised defendant's counsel a week in advance of his intention to disclose what he thought was a conviction for grand larceny; he allowed defendant, before asking him about the conviction, to scrutinize the FBI arrest record so he would know what he was being asked about; he allowed defendant on cross examination freely to correct what defendant admitted were errors in his direct examination regarding his criminal record; and immediately upon being informed that defendant had not been convicted of grand larceny, he reported this fact to the Court and requested the Court promptly to so inform the jury. The Court holds that the conduct of the United States Attorney was beyond reproach.[8]

Even so, if the Court were satisfied that defendant had been prejudiced—no matter how well-intentioned the conduct of the United States Attorney, the Court would not have hesitated promptly to have granted defendant appropriate relief.[9] It was clear to the Court at the time of the trial, based upon the Court's observation of the demeanor of counsel on both sides, the demeanor of defendant and the reaction of the jurors to the entire episode involving defendant's criminal record, that defendant was in no way prejudiced. This has been made even more manifest by subsequent disclosures in defendant's pre-sentence report. After all, the most defendant could have hoped for was a mistrial, followed by a new trial. On a new trial, in view of the disclosures in his pre-sentence report, his prior criminal record necessarily would place him in a light less favorable than that in which he was placed in the trial just concluded. The Court holds that defendant was not prejudiced by the manner in which his prior criminal record was presented to the jury.

7. Cf. United States v. Provoo, 215 F.2d 531, 535 (2 Cir. 1954) ("But these highly inflammatory and prejudicial collateral and irrelevant charges were brought to the jury's attention. Nor was it done by accident or unintentionally.")

8. In Darby v. United States, 283 F.2d 896 (10 Cir. 1960), the prosecuting attorney cross examined defendant on the basis of an F.B.I. "rap sheet". Defendant was asked about eight prior felony convictions, five of which he denied. The government failed to produce evidence to support such convictions. The Court of Appeals for the Tenth Circuit, in affirming defendant's conviction, stated (283 F.2d 896, 898):
   "It is also contended that the court committed reversible error in permitting cross-examination of appellant with respect to prior convictions. Appellant was asked about eight previous felony convictions. He denied connection with respect to five of them. It is contended that the asking with respect to the five convictions, which he denied, without the production of evidence by the Government to support such convictions, constituted prejudicial error. Aside from the fact that no objections were made to these questions at the time they were asked, we are of the view that no prejudice resulted therefrom. The court fully instructed the jury with respect to these questions. It told the jury, 'to disregard any questions that were asked of the defendant, regarding former convictions which were denied by the defendant.' This instruction was clear and we cannot indulge a presumption that the jury did not understand it or disregarded it."

9. This Court is not insensitive to the effect upon a defendant's chances of a fair trial of a prosecutor's deliberate and truly prejudicial injection into a case of a defendant's prior record of criminal activity. United States ex rel. Brown v. Smith, 200 F.Supp. 885, 893–896 (D.Vt. 1962), rev'd, 306 F.2d 596 (2 Cir. 1962), cert. denied, 372 U.S. 959, 83 S.Ct. 1012, 10 L.Ed.2d 11 (1963).

## II

## DEFENDANT'S MOTION TO REDUCE SENTENCE

■ The sentence was imposed in this case only after careful deliberation. It took into account every factor regarding defendant of which the Court was aware, including observations of defendant during a ten day trial and information set forth in a meticulously fair pre-sentence report. The sentence is in line with other sentences imposed by this Court in tax evasion cases after trial.

The Court also has weighed the further considerations urged by defendant's counsel in support of his motion to reduce sentence. The argument that defendant's sentence is excessive when compared with that imposed upon his codefendant who pleaded guilty to the conspiracy of which defendant was convicted by a jury, is not persuasive, to put it mildly. Nor is the Court persuaded by defendant's plea that his incarceration will work a hardship upon his former wife whose marriage to defendant was annulled 15 years ago and upon *her* children by a subsequent marriage, her second husband being in default in *his* obligations to support *his* children and defendant's former wife.

Defendant's motion to reduce sentence is denied.